In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00140-CV
_____

IN THE INTEREST OF R.A.S. AND J.R.S.

On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 18-11-15193-CV

MEMORANDUM OPINION

Mother and Father seek to overturn the trial court's judgment terminating their parental rights to their children, *Abbie* and *James*.[1] In separate appeals, Mother and Father argue the evidence does not support the trial court's findings that terminating their parent-child relationships with Abbie and James is in each child's best interest.[2]

---

[1] To protect the privacy of the parties involved in the appeal, we identify the parents and their children by using pseudonyms. *See* Tex. Fam. Code Ann. § 109.002(d).

[2] *See id*. § 161.001(b) (authorizing courts to order a parent's relationship with a child terminated upon one of the predicate statutory findings listed in section 161.001(b)(1) of the Texas Family Code when that finding is coupled with another finding that terminating the relationship is in the child's best interest).

1

After reviewing the evidence, we overrule the parents' issues claiming it is insufficient to support the trial court's best-interest findings. We will affirm.

Background

In 2015, the Department of Family and Protective Services learned Mother and Father were not properly caring for their child, Abbie. That year, the Department removed Abbie from the parents after it learned the police arrested Mother and had charged her with possession of marijuana and controlled substances under circumstances determinantal to the child. Although the Department removed Abbie from her parents' home, the Department later reunited Mother and Father with Abbie in 2017 after they completed a family reunification plan. In mid-2017, Mother gave birth to James.

Abbie and James came to the Department's attention again in January 2019, when the Department learned that Father was homeless and that the police had arrested Mother and charged her with the possession of cocaine. After opening a second investigation, which focused mainly on Mother's use of illegal drugs, the Department removed Abbie and James from Mother's home. Father was not living in the home, and the Department refused to place the children with him because his housing was unstable and he could not provide them a safe place to live.

In January 2019, the Department moved to terminate Mother's and Father's rights to parent Abbie and James. In March 2020, the court called the case to trial. Ten witnesses, including Mother and Father, testified in the trial. The parties tried the disputed issues to the bench. Following the trial, the trial court terminated Mother's and Father's rights to Abbie and James. In terminating their rights, the trial court found that each had knowingly placed or allowed Abbie and James to remain in conditions that endangered their well-being, engaged in conduct or knowingly placed them with persons who engaged in conduct that endangered their physical or emotional well-being, and violated the provisions of a court order that set out what each needed to do before the court would order the Department to return the children to them.[3] Along with these three predicate findings under subsections D, E, and O of the Family Code, the trial court also found the termination of their rights would be in each child's best interest.[4]

Mother and Father filed separate appeals. But in each brief, the parents argue the evidence admitted in the trial is legally and factually insufficient to support the trial court's best-interest findings.

---

[3] *See id*. § 161.001(b)(1)(D), (E), (O).
[4] *See id*. § 161.001(b)(2).

Standard of Review

On appeal, Mother and Father do not argue the evidence is insufficient to support the findings that they violated subsections D, E, and O of the Family Code.[5] Instead, both challenge the sufficiency of the evidence supporting the trial court's best-interest findings.

"In determining whether the evidence is legally sufficient to support a best-interest finding, we 'consider the evidence that supports a deemed finding regarding best interest and the undisputed evidence,' and ignore evidence a fact-finder could reasonably disbelieve."[6] Under the Family Code, a "rebuttable presumption [exists] that the appointment of the parents of a child as joint managing conservators" will serve the child's best interest.[7] That said, there is also a rebuttable presumption that a prompt and permanent placement of a child in a safe environment is in that child's best interest.[8]

In our review of a best-interest finding, we apply the nine factors described by the Texas Supreme Court in *Holley v. Adams* to measure whether the record

---

[5] *Id.* § 161.001(b)(1)(D), (E), (O).

[6] *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (quoting *In re J.F.C.*, 96 S.W.3d 256, 268 (Tex. 2002)).

[7] Tex. Fam. Code Ann. § 153.131(b); *see also In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (noting that a "strong presumption" exists favoring keeping a child with its parents).

[8] Tex. Fam. Code Ann. § 263.307(a).

contains evidence sufficient to support a finding that terminating a parent's right to his or her child is in the child's best interest.[9] We note, however, that these factors are not exclusive, and courts may consider other factors when deciding whether the evidence in a specific case supports the trial court's best-interest finding.[10] Here, Mother and Father note the Department failed to produce evidence that addressed all nine of the *Holley* factors. But the Department is not required to do so when "the evidence [is] undisputed that the parental relationship endangered the safety of the child."[11] As we noted, the parents do not challenge the trial court's findings that they engaged in conduct that endangered Abbie and James.

In a sufficiency review challenging a best-interest finding, no one *Holley* factor controls whether the record contains evidence sufficient to support the finding

---

[9] In *Holley*, the Texas Supreme Court applied these factors when reviewing a best-interest finding:
  • the child's desires;
  • the child's emotional and physical needs, now and in the future;
  • the emotional and physical danger to the child, now and in the future;
  • the parenting abilities of the parties seeking custody;
  • the programs available to assist the parties seeking custody;
  • the plans for the child by the parties seeking custody;
  • the stability of the home or the proposed placement;
  • the parent's acts or omissions that reveal the existing parent-child relationship is improper; and
  • any excuse for the parent's acts or omissions.
*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).
[10] *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).
[11] *Id*. at 27.

that a parent appealed.[12] For that reason, evidence on just one of the factors in some cases may provide enough support for the trial court's finding that terminating the parent-child relationship is in the child's best interest.[13]

Often, evidence introduced to show the parent engaged in the types of conduct that violate subsections D, E and O is also relevant to reviewing the sufficiency of the evidence to support the best-interest finding.[14] The evidence addressing what is in the child's best interest may include direct and circumstantial evidence, which may include subjective factors such as observations the factfinder makes about the parents when they appear in court.[15] Often, past conduct is relevant to the trial court's role in the case when it acts as the trier of fact in deciding whether terminating the relationship between the parent and the child is in the child's best interest.[16] In our review, we examine the evidence that supports the trial court's finding from the standpoint of the child, not the child's parent.[17]

---

[12] *See In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

[13] *Id.*

[14] *See In re A.M.*, 495 S.W.3d 573, 581 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

[15] *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

[16] *Id.*

[17] *See In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.) (citing *In re S.A.P.*, 169 S.W.3d 685, 707 (Tex. App.—Waco 2005, no pet.)).

Analysis

Mother and Father have not disputed the evidence established that they have a long history of abusing drugs. For example, in his brief Father acknowledges that the evidence "clearly demonstrates" he "has a substantial history of substance abuse[.]" He also acknowledges he continued to use methamphetamines until October 2019, claiming he stopped using them about five months before trial. While acknowledging he acquired a drug problem, Father makes the same basic argument he made at trial and suggests that if allowed more time to complete a drug rehab program, he can free himself from his need to use illegal drugs. Father points to the evidence that he argues supports his claim that he's turned the corner. He also relies on other evidence admitted in the trial that shows that at the time of the trial, he was living in a trailer with sufficient room for the children and he was working multiple jobs as a construction worker. Father suggests the trial court erred by concluding his efforts to free himself from his addiction will not succeed, given the sincere efforts he has made toward recovering from his addiction.

Like Father, Mother points to the evidence before the trial court that shows she loves her children, has a safe place for them to live, and has engaged in a drug rehab program to gain the skills she needs to control the urges she has that have led her to the use of illegal drugs. That said, Mother acknowledges the record contains

7

evidence showing she ingested illegal substances just five months before the trial. Mother also acknowledges she has suffered from her addiction to drugs for around eleven years. Mother argues the trial court erred by refusing to believe her testimony claiming she has turned the corner and can remain sober given evidence showing that she was sober at the time of trial. Besides the evidence that she was doing well in her drug rehab program, Mother relies on testimony showing she has exercised her rights to visit the children after they were taken from her home. She points to the evidence in the trial showing she worked diligently to comply with the requirements of her court-ordered family service plan. While Mother acknowledges she failed to complete some parts of her plan, she suggests the trial court should have accepted the excuses she offered in the trial to explain why she could not comply with those requirements. Mother notes she has a favorable employment history, and we acknowledge the evidence shows she has worked regularly for the same employer in a convenience store for the past five years. Based on her income and her current living arrangements, Mother contends the evidence shows she can now adequately house the children and provide them with what they need.

Mother also proposed a plan allowing Mother and Father to complete their drug rehab programs while leaving the children in their current placement with a relative. Mother suggests that her plan is superior to the one proposed by the

Department, a plan asking the trial court to terminate Mother's and Father's rights so the children would be available to be adopted by relatives.

Here, the trial court gave greater weight to the interest Abbie and James have in a prompt and permanent placement in a safe home over the rights of their parents to retain their parental rights.[18] When the trial court called the case to trial, the children were living with Father's brother and sister-in-law. The children had been in that placement for more than a year. The aunt testified in the trial the children have a safe place to live, and she described how she and her husband provide the children with what they need. According to the aunt, she wants to adopt the children, but if allowed to do so she would still allow the children to see Mother and Father if they could stay sober and free from drugs. The aunt's husband (Father's brother) confirmed he wants to adopt the children. The uncle explained he did not "want them to be hurt over and over again by having parents come into their lives and then getting back on the drugs and then hurting them over and over." On permanency, the court-appointed special advocate (CASA) testified that leaving the children "in limbo is not serving [them] any justice." The CASA and the caseworker assigned by the Department to work on the children's case testified that a ruling terminating

---

[18] *See* Tex. Fam. Code Ann. § 263.307(a).

Mother's and Father's parental rights to free them for adoption by relatives would serve Abbie's and James's best interests.

In an appeal challenging a finding of fact, the appellate court will not reverse the trial court's ruling when evidence in the trial allowed that court, as the trier of fact, to form a reasonably firm belief or conviction that terminating a parent's rights to parent a child is in the child's best interest. We conclude the evidence shows that during Abbie's and James's lives, the parents go through cycles of drug abuse, periods of sobriety, and then relapse. As the trier of fact, the trial court had to balance the need Abbie and James have for stability, safety and permanency against Mother's and Father's rights. On this record, the manner in which the trial court struck that balance is not unreasonable. As the factfinder, the trial court could reasonably discount (if not entirely disbelieve) the parents' arguments claiming the evidence they presented established they can successfully complete their drug rehab programs and maintain sobriety over the periods needed to give Abbie and James a safe, stable and permanent home.

We find the trial court's conclusion the Department had a superior plan to the plans proposed by Mother and Father was reasonable.[19] Leaving the children in limbo while Mother and Father seek to free themselves from their longstanding

---

[19] *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

addictions conflicts with the need each child has for a prompt and permanent placement in a safe home.[20] We conclude the record contains sufficient evidence to support the trial court's best-interest findings.[21] We hold Mother's and Father's issues arguing the evidence is insufficient to support the trial court's best-interest findings lack merit.

## Conclusion

We hold the evidence supports the trial court's best-interest findings. For that reason, the trial court's judgment terminating Mother's and Father's parental rights is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 9, 2020
Opinion Delivered October 22, 2020

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[20] *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).
[21] *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 266.